Thank you, Your Honors. I'd like to reserve, if I can, three minutes for rebuttal, and I'll try to watch it up here, too. Thank you. I'd like to touch just very briefly upon the chronology of the case before turning to our main issues, because such a review will help better highlight the legal matters that we need to present. First of all, the petitioner, Ms. Kalal, is a native and citizen of Columbia. On July 4, 1996, she was admitted to the US on a valid K-1 fiancé visa filed for her by her fiancé. She did not marry the K-1 petitioner at the time. Ms. Kalal later married Kenneth Kalal, who filed an immediate relative immigrant I-130 petition on her behalf. The I-130 petition was approved by the INS on October 9, 1997 by an immigration examiner. In addition, Ms. Kalal also filed a Form I-45 application to adjust status to allow her to become a permanent resident of the United States. That was also approved by an immigration examiner after having conducted an interview with her and her husband at the time. Eventually, she applied for a file to form I-751 petition to remove conditions on her permanent resident status. And on March 20, that was filed August 17, 1999. Several months later, more than a year later, November 28, 2000, the INS issued an intent to rescind permanent residence letter. And that's in the record. Ms. Kalal filed a timely response, requested a hearing before an immigration judge on the rescission matter. And then, however, the Immigration Service, rather than placing her in the rescission proceedings directly before an immigration judge, decided that they would just apparently rescind her status and moved her directly into removal proceedings before the immigration judge. She was never given the opportunity to have under 246.1 and 246.3 of the eight CFR to actually have a full rescission hearing on the basis for what happened with her. But you did have the opportunity to have that hearing as part of the removal proceedings. Pardon me, Your Honor? You had the opportunity to have that hearing as part of the removal proceedings. It was just rolled into one, right? No, Your Honor. And in fact, I think what happened in there is the immigration judge said that the INS had followed improper procedure and that he refused to take any testimony from her or allow her to present her case directly in the proceedings about reasons why she shouldn't have her status rescinded. Now, I want to mention at the outset, and this is a very delicate matter. I've discussed it with opposing counsel. We have a very similar case that I argued November 2 before the Ninth Circuit that had an element on this issue of the INS skipping the allowance of a 246 or rescission proceedings before an immigration judge. We received just recently, March 8, and I only found out when the client contacted us because we still haven't received the memorandum. It's an unpublished opinion. The only reason it was unpublished, though, is in the last paragraph. It essentially says, well, it does say, it says the reason we're not publishing this is because we don't expect to see this kind of issue before this Court again. Well, but we can't consider an unpublished opinion. We really can't hear about an unpublished case. And we will not consider it. OK. What I was going to ask, though. Your remedy is if you want to publish, you can ask for that case to be published. Right, Your Honor. And I just want to inform the Court that we are going to be finally doing this. I really don't want to know anything about it, honestly. And it doesn't help your cause to urge it. I'll leave that there, Your Honors. Thank you. Now, several issues were raised in our briefs, but I'd like to focus on the ones we believe are especially important. The first one is that Ms. Kalau's adjustment of status was lawful and permissible in 1997. The proposed regulations at the time that purported to bar adjustment of status to aliens who failed to marry their K-1 petitioners had not been adopted at the time Ms. Kalau entered the US on her K-1 visa. The regulations were not apparently adopted until much later. At the same time that her status was adjusted by an immigration examiner, mater zantitis, which still appeared as good law, allowed an individual who entered the US on a K-1 fiance visa, but who did not marry the K-1 petitioner, but did marry another US citizen, to adjust status in the US. From what I can tell, it does not appear that zantitis was ever explicitly overruled. To this day, in addition to this day- Well, zantitis was a much earlier case, and it was before the statutes were changed. And it also relied upon a statute that said you can get relief if you came here before 1967 or 87, or something like that. In any event, at least the person in zantitis did marry within the 90-day period, didn't the person? Well, I think her point was, though, in this is that the language that was in zantitis was concerning a statute that said that in the event that the marriage with the petitioner does not occur within three months after entry of the said alien and minor children, they should be required to depart from the United States. And upon failure to do so, she'll be deported in accordance with, and it cites some sections. Another case that we think has similar rationale and logic that should be applied was Stockwell. And Stockwell, again, was addressing a case, this is a 1991 case now, that addressed this issue on the same kind of language in section 245-D of the INA, which I believe is 8 U.S.C. 1255-D, says that the attorney general may not adjust the status of an alien lawfully admitted to the United States for permanent residence on a conditional basis under section 216. Well, it was a different section, right? Yes, it was a different section. But, well, the 245-D section, though, is discussed in both of these. I mean, it's essentially the same language. Furthermore, if I recall in Stockwell, at some point the person did get proper CLPR status. Right, well, they did, but they allowed it. It says, well, the statutory language seems to have never got proper CLPR status. Pardon me? Your client never did get proper CLPS. Well, but she was granted, though, adjustment of status and was granted lawful permanent residence status by the immigration team. I mean, by the immigration team. She never got proper status under the statutory scheme, did she? But at the time, though, I mean, our argument is that she was allowed to have done that under the regulations. And the operating instruction at that time that still is in existence today, and I know that they're not necessarily binding, but they're supposed to give guidance to the examiner, 245.8c still allows, and it's still in the records, and still allows adjustment under those situations. Now, if you want to save some time for rebuttal. Yes, I will. Thank you very much, Your Honor. Mr. Byer, can I have that right now? Pardon me? You pronounce it Byer? Yes, yes. Thank you, sir. May it please the Court. Brian Byer on behalf of Respondent Gonzalez. I'll just quickly review the essential elements of this case. The immigration judge's decision consists of two findings. Number one, petitioner was removable because she was inadmissible at the time of the adjustment of status. That was the charge upon which the immigration judge found her removable, and that was the basis upon which the board affirmed the order of removal. She should have been given a rescission hearing, though. Well, Your Honor, the issue of rescission is really something of a distraction in this case. The statute, section 246, provides that rescission is not the exclusive procedure to be used to remove an alien's erroneously granted adjustment of status. And under the Hernandez case, the board decision, the analysis of whether a violation of a regulation like the rescission proceeding hinges on whether there is a showing of prejudice. As Your Honor earlier mentioned, Ms. Kalal essentially got her rescission hearing in the context of removal hearing. Does not the statute say, especially 1256, that you don't have to have a separate rescission hearing, that you can have a removal hearing? That's correct, Your Honor. That's why I said that it's not an exclusive proceeding under the statute. And as the immigration judge found, by ordering her removed on the basis of the finding that she was inadmissible at the time of the adjustment of status, he's effectively concluded that the adjustment of status was not properly granted, was erroneous in fact, and therefore should be rescinded. And under the law, the issuance of the removal order is effective to rescind her adjustment of status. How do you deal with the operating instructions issue? Well, Your Honor, the operating instructions are informal guidances that don't have a binding effect of law. In this regard, I'd refer the court to the Perez-Gonzalez case that was decided after briefing in this case. The court there was assessing whether a guidance memorandum trumped a regulatory provision of the CFR regulations. And the court there said it doesn't. It said we have to give effect under Chevron to the regulation. And the informal memoranda or the operating instructions would only have persuasive power or any sort of precedential value to the extent that they're persuasive. And in this case, Your Honor, they're clearly not, because as the immigration judge found, they're vague and they are inconsistent with the statute. I mean, the bottom, the last three words quoted of the operating instruction is something to the effect of if the person is eligible. Well, I mean, just simply, the general rule is justice, like all the other departments, I'm sure, has a whole lot of operating manuals and operating instructions and procedures. And I've never found the case that, say, any of these confer any kind of enforceable right, right? Correct, Your Honor. That kind of informal manual. This is precisely that level of guidance. What's the government's response to the arguments of petitioner relying on the matter of Stockwell? Well, as the immigration judge concluded, Stockwell had been superseded by the regulation 245.1c6. Was there a statutory change after Stockwell or just the addition of a reg? Well, the regulation was issued after Section 245i was enacted. The other aspect of Stockwell that's important for the court to understand is that Stockwell did not consider the language that is really determinative of petitioner's case. As Judge Fernandez was earlier pointing out, Stockwell did not consider the second sentence of Section 245d, which states that the attorney general may not adjust the status of a non-immigrant alien described in Section 101k, the non-immigrant fiance, except in relation to the petition by the petitioner who obtained the K-1 visa for her. That language was the reason for the immigration was the basis of the immigration judge's conclusion that she was not eligible or she was not admissible at the time of the adjustment of status. Let me ask a question. It's not an issue in the case, but just out of my own curiosity, if a person gets caught in the situation of this petitioner and assume they're acting in good faith, what's the remedy? To leave the country and then to come back under another petition? Is that what the remedy is? I believe that's true, Your Honor. If the petitioner had departed after receiving the visa and then sought reentry, I don't believe she'd be considered an alien admitted under a non-immigrant K visa anymore, because she'd be coming in as a spouse of a US citizen. To just tie up one end about the rescission aspect of the case, really what the difference is between the INS doing what it did here and following the regulation is simply a matter of procedure. There's absolutely no basis for concluding that the petitioner was prejudiced in any way. She got an appeal to the Board of Immigration Appeals in the removal proceeding that she would have gotten just as well through an appeal of the immigration judge's decision in a rescission hearing if it hadn't been had. And furthermore, the immigration judge assured himself in the removal proceeding that these were purely issues of law. There was no disputed questions of facts. And so there was really no need for a rescission hearing. And under the circumstances, there's just no basis for prejudice. So to address the last point on the regulation, the petitioner is ineligible to adjust under 245I. The regulation, as the immigration judge indicated, is clear. 245.1c6 says that aliens falling in the class that the petitioner is in cannot adjust under Section 245. Without any limitation to any specific subsection. And that's a reasonable interpretation of the law. It's true, as indicated in the briefs, that Section 245 is not as clear on that point as it could be. Section 245I says, notwithstanding subsections A and C, and subsection D, which is not affected, does not refer to Section 245 in its entirety, but is limited to Section 245A, if the court is still following. I'm sorry for all the alphabet soup here. But the clear intent of the law was that aliens who are admitted for the sole purpose of getting married within three months to a particular person is not served by then extending the provisions of 245I. And the attorney general reasonably interpreted the statutes, including the provision that says, if an alien does not comply with the terms of the visa, it shall depart. And if they do not depart, they shall be removed. It's pretty clear that Congress would not have intended, by enacting 245I, to extend, to permit an alien to evade the carefully wrought scheme of conditional permanent residence and then removing the conditional permanent residence and thereby adjust the status. So for these reasons, if the Court has no further questions, I'll just urge the petition for review to be denied. I have no further questions. Thank you, Mr. Bair. Mr. Nurheim, we have a little time here. Thank you. I'm going to respond to one issue very quickly. The government has argued that this was simply a matter of just a proceeding and processing on the rescission issues and that it was adequately handled by the immigration judge. The problem is that under the regulations, if an alien files an answer within 30 days of receiving a notice of intent, which either contests or denies any allegation in the notice or requests a hearing, a hearing shall be conducted by an immigration judge on rescission. And that's at HCFR 246.3. Ms. Kalau disputed the notices, allegations, and requested a hearing. Rather than grant her a rescission hearing, however, the INS summarily rescinded her adjustment of status in the case. So the question is, assuming the regulation was violated, what's the prejudice? The prejudice is she already had a protected interest when she was given her lawful permanent residence status. At the initial interview in 1997, they've taken away a status right from her, and that's the protected interest, Your Honor. She had already been granted permanent residence status in 1997 by an immigration examiner who had before him the record. But didn't she have the opportunity to argue that point in the removal hearing? The immigration judge didn't allow her to argue anything in there other than on what he decided was a legal matter. He didn't. Yeah, the question of law. Right. And then if you thought that was error, that was subject to appeal to the BIA. But the problem is that when you've done a timely request for a rescission hearing, there's a mandate that such a hearing be held, OK? And there was no hearing on rescission that was held. And in the context of the proceeding that the immigration judge actually conducted, he never actually considered directly the whole process of rescission. Our whole point is that the immigration examiner, when he originally adjusted her status, made a rational decision under the law and the facts that he understood at the time. And our point is that at that point in time, those regulations were set up to protect against marriage fraud. That's the whole point of the review of the K-1 and the requirement. In this case, he had the opportunity to review this, and he found no fraud. And he apparently went on and he granted her status. And if the purpose of those regulations is to protect against marriage fraud in a case like this when there is no marriage fraud, then it seems to me that her adjustment of status was valid and that we can't now go back unless you can show that the decision was irrational or was clearly unsupported by the law. And that wasn't the case at the time he made your decision. For those reasons, Your Honor, and the other reasons stated in the briefs, I request that you grant our petition for review. Thank you, Your Honor. Thank you, Mr. Norton. Your Honor, Kalal v. Ashcroft, I guess it will be changed to v. Gonzalez, is now submitted. And we thank counsel for their fine arguments. Yes, indeed.
judges: Fernandez, Tashima, Gould